IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA FALU-RODRIGUEZ,<br>   Plaintiff,<br><br>   v.<br><br>DEMOCRACIA USA, INC.,<br>   Defendant. | CIVIL ACTION NO. 10-3811 |

**MEMORANDUM**

YOHN, J.                                                                                                        January 4, 2011

Plaintiff, Maria Falu-Rodriguez, brings this suit against Democracia USA, Inc. ("Democracia") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended. Plaintiff contends that Democracia fired her because of her gender, pregnancy, and childbirth.

Democracia has moved to transfer the case to the District of New Jersey, Camden Division, under 28 U.S.C. § 1404. For the reasons set forth below I will deny Democracia's motion.

**I. Factual Background**

The following brief summary is based on the allegations in the complaint. Plaintiff is an individual residing in New Jersey. (Compl. ¶ 1.) Democracia is a not-for-profit corporation organized under the laws of Florida, with its principal address in Florida. (Compl. ¶ 2.)

Plaintiff began working for Democracia as a New Jersey state coordinator on or around July 1, 2008. (Compl. ¶ 7.) Plaintiff learned she was pregnant in August 2008, but was ineligible

for medical leave because she had not worked for Democracia for twelve consecutive months as required under Democracia's medical leave policy. (Compl. ¶¶ 11, 14-15.) Plaintiff claims that she was nevertheless granted permission to take maternity leave from February 16, 2009, until April 10, 2009, consisting of sick days, vacation days, unpaid leave, and time working from home. (Compl. ¶¶ 19-20.) Plaintiff commenced her maternity leave on February 16, and her child was born on February 25, 2009. (Compl. ¶¶ 22, 25.) After plaintiff began her maternity leave, however, Democracia informed her that she would have to attend a staff retreat in Miami, Florida—in March, during her maternity leave—or be fired. (Compl. ¶¶ 23-24, 26-28.) Plaintiff's superiors refused or ignored her requests for accommodation, and fired her on or about March 24, 2009, ostensibly for failure to attend the retreat. (Compl. ¶¶ 29-32.)

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") and received a right-to-sue notice from the EEOC on or about May 3, 2010. (Compl. ¶¶ 36-37.) Plaintiff then initiated this action by filing a complaint on July 29, 2010. Democracia has moved to transfer the action to the District of New Jersey, Camden Division.

## II. Discussion

Even if venue is properly laid in the district where an action is pending, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1] 28 U.S.C. § 1404(a). Although the decision to grant a motion for a transfer of venue under section 1404 lies

---

[1] Plaintiff does not dispute that this action could have been brought in the district of New Jersey. I need not examine the issue to decide this motion.

within the discretion of the district court, "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (reminding that "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"). The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. *Jumara*, 55 F.3d at 879.

The decision to transfer a matter pursuant to section 1404(a) is discretionary and made on an "individualized, case-by-case basis." *Jumara*, 55 F.3d at 883. In ruling on motions under section 1404(a), courts "'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum,'" including both "private and public interests." *Id.* at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3847 (2d ed. 1986)).

Private interests may include "plaintiff's forum preference," "the defendant's preference," "whether the claim arose elsewhere," "the convenience of the parties as indicated by their relative physical and financial condition," "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* at 879. Public interests may include "the enforceability of the judgment," "practical considerations that could make trial easy, expeditious, or inexpensive," "the relative administrative difficulty in the two fora resulting from court congestion," the "local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

3

Of these interests, the plaintiff's choice of forum is ordinarily entitled to "paramount consideration," and should prevail "unless the balance of convenience of the parties is *strongly* in favor of defendant." *Shutte*, 431 F.2d at 25. Democracia argues that in this case, because plaintiff is not a resident of this district and the operative facts did not occur in this district, plaintiff's choice of forum "warrants little or no deference." (Def.'s Mem. in Support of Def.'s Mot. to Transfer ("Def.'s Mot.") 4.) I need not resolve the merits of this argument because Democracia has failed to meet even the lesser burden it seeks to have applied in this case.[2]

Even assuming that plaintiff's preference is not entitled to "paramount consideration," it would not be outweighed simply by Democracia's preference to litigate in New Jersey, and Democracia has not established that the remaining private interests weigh heavily in its favor, or in its favor at all. Although Democracia claims that the Camden Division of the District of New Jersey would be a more convenient forum for both parties, it does not explain why a courthouse less than five miles away from the present forum would be more convenient for either party. Plaintiff has owned and operated a real estate business in Philadelphia since her termination by Democracia, commutes to Philadelphia every day, and thus chose this forum as the most convenient for her. (Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Resp.") 4; Pl.'s Resp. Ex. A ("Pl.'s Aff.") ¶ 6.) In contrast, Democracia does not offer any specific facts that support its contention that Camden, New Jersey, is the more convenient forum for both parties.

Moreover, Democracia asserts that plaintiff's claims arose in the District of New Jersey

---

[2]It is true that "absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her 'home turf,' the defendant's burden is lessened." *Teleconference Sys. v. Proctor & Gamble Pharm.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009). A plaintiff's choice of forum is also entitled to less weight where "none of the operative facts of the action occur[ed] in the forum selected by the plaintiff." *Schmidt v. Leader Dogs for Blind, Inc.*, 544 F. Supp. 42, 47 (E.D. Pa. 1982). As explained below, however, plaintiff has a rational reason for choosing to litigate in this district and defendant has failed to specify any operative facts that occurred in New Jersey.

4

but does not explain which events relevant to this case took place there. Although plaintiff worked for Democracia's New Jersey office, according to plaintiff's affidavit Democracia "treated New Jersey and Pennsylvania as effectively one unit" and "approximately 45% of [plaintiff's] office time was spent in . . . Democracia's Philadelphia office . . . ." (Pl.'s Aff. ¶ 4.) Democracia has offered no evidence or allegations to the contrary. Moreover, Democracia does not specify which decisions relevant to this case, if any, were taken in New Jersey as opposed to Democracia's head office in Florida.

Regarding the convenience of potential witnesses, although some relevant witnesses may reside in New Jersey, Democracia has not specifically identified any such witnesses, discussed the testimony that those witnesses would provide, or explained the importance of such testimony. *See* 15 Wright, Miller & Cooper, *supra*, § 3851, at 425-32 ("The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."); *Austin v. Johns-Manville Corp.*, 524 F. Supp. 1166, 1169 (E.D. Pa. 1981) (same). Nor has Democracia alleged that any of the witnesses residing in New Jersey would "actually be unavailable for trial" in this district. *See Jumara*, 55 F.3d at 879 (noting that convenience of the witnesses should be considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora"). Democracia has similarly neglected to specify which documentary evidence, located in the District of New Jersey, would be difficult to produce at trial in Philadelphia, and why. *See id.* (the location of books and records is relevant "to the extent [they] could not be produced in the alternative forum"). Democracia's unsupported arguments fail to demonstrate that the relevant private interests weigh in favor of transfer.

Democracia has also failed to demonstrate that the relevant public interests weigh in favor of transferring venue to New Jersey. Democracia concedes that the enforceability of the judgment

will not be affected by the choice of venue, that no public policies of either fora are implicated and that no familiarity with the state laws of either forum will be required. (Def.'s Mot. 6-7.) Further, Democracia's claim that practical considerations weigh in favor of transfer largely rests on the cost and witness-availability arguments rejected above. (*Id.* at 6.)

Democracia argues that judicial economy will be promoted by transfer because the District of New Jersey has a less congested civil docket, but according to Democracia's own argument in support, the median time from filing to disposition for civil cases in the Eastern District of Pennsylvania differs from that in the District of New Jersey by less than two months. (*Id.* at 7.) This factor weighs in Democracia's favor only very slightly, if at all.

With respect to the "local interest in deciding local controversies at home," *Jumara*, 55 F.3d at 879, Democracia merely asserts that this is a New Jersey controversy. (Def.'s Mot. 7.) As discussed above, however, Democracia has failed to demonstrate that New Jersey bears the strongest connection to this case.

**III. Conclusion**

Democracia's arguments, which rely on conclusory statements and lack specific factual support, are insufficient to meet Democracia's burden of showing that the balance of public and private interests weighs in favor of transfer. I will therefore deny Democracia's motion to transfer. An appropriate order follows.